# No. 23-809

IN THE UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

ERIC PASSMAN AND ISHMAEL ALVARADO, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

PLAINTIFFS-PETITIONERS,

V.

PELOTON INTERACTIVE, INC.,

DEFENDANT-RESPONDENT.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## OPPOSITION TO PLAINTIFFS'
## PETITION FOR PERMISSION TO APPEAL

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Christine C. Smith
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Steven N. Feldman
William O. Reckler
Samir Deger-Sen
Lilia B. Vazova
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Respondent Peloton Interactive, Inc.*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Respondent Peloton Interactive, Inc. states it is a publicly traded company, that it has no parent corporation, and that, upon information and belief, T Rowe Price Associates, Inc. owns more than 10% of Defendant's Class A common stock. Upon information and belief, T. Rowe Price Associates, Inc. is an affiliate of T. Rowe Price Group, Inc., which is a publicly-held corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................................i

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................4

    A.    Factual Background...............................................................................4

    B.    Procedural Background ........................................................................6

        1.    The District Court held that Plaintiffs failed to propose a methodology that could show common causation and injury on a classwide basis.........................................................7

        2.    The District Court held that Plaintiffs failed to propose a methodology that could calculate damages attributable to their theory of liability. ...........................................................10

ARGUMENT ..................................................................................................11

I.    THE DISTRICT COURT'S DENIAL OF CLASS CERTIFICATION IMPLICATES ONLY A FACT-BOUND DISPUTE OVER THE QUALITY OF PLAINTIFFS' EXPERT EVIDENCE. ...............................11

    A.    The District Court did not require proof of a price premium. ............11

    B.    The District Court correctly applied *Comcast*. ...................................16

    C.    The District Court correctly considered Peloton's expert reports rebutting Plaintiffs' price-premium analysis.......................................20

II.    THERE IS NO COMPELLING NEED FOR IMMEDIATE RESOLUTION OF THESE ISSUES, NOR DOES THE ORDER EFFECTIVELY TERMINATE THE LITIGATION...................................21

CONCLUSION ...............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegra v. Luxottica Retail North America*,
341 F.R.D. 373 (E.D.N.Y. 2022).................................................................13, 18

*Ault v. J.M. Smucker Co.*,
310 F.R.D. 59 (S.D.N.Y. 2015) ...........................................................................12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..........................................................................2, 14, 16

*Famular v. Whirlpool Corp.*,
2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019)....................................................17

*In re General Motors LLC Ignition Switch Litigation*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................................19

*Kurtz v. Costco Wholesale Corp.*,
818 F. App'x 57 (2d Cir. 2020) ..........................................................................18

*Kurtz v. Kimberly-Clark Corp.*,
414 F. Supp. 3d 317 (E.D.N.Y. 2019) ................................................................18

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
897 F.3d 88 (2d Cir. 2018) .................................................................................14

*Marotto v. Kellogg Co.*,
2020 WL 509035 (S.D.N.Y. Jan. 31, 2020) .......................................................12

*McLaughlin v. American Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by*
*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) ......................16

*McMorrow v. Mondelez International, Inc.*,
2020 WL 1157191 (S.D. Cal. Mar. 9, 2020)................................................17, 18

*Miles v. Merrill Lynch & Co. (In re Initial Public Offerings Securities
Litigation)*,
471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g*,
483 F.3d 70 (2d Cir. 2007) ........................................................3, 11, 15, 20, 21

*Pardini v. Unilever United States, Inc.*,
   2020 WL 6821071 (N.D. Cal. July 10, 2020) ...................................................17

*Price v. L'Oreal USA, Inc.*,
   2021 WL 4459115 (S.D.N.Y. Sept. 29, 2021) ..................................................18

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ............................................................................16

*Schechner v. Whirlpool Corp.*,
   2019 WL 4891192 (E.D. Mich. Aug. 13, 2019) ...............................................19

*Singleton v. Fifth Generation, Inc.*,
   2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017)...................................................18

*Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd. (In re
   Sumitomo Copper Litigation)*,
   262 F.3d 134 (2d Cir. 2001) ...........................................................1, 3, 13, 21, 22

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)...........................................................................................15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, &
   Products Liability Litigation*,
   500 F. Supp. 3d 940 (N.D. Cal. 2020), *aff'd sub nom. Schell v.
   Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022) ............................19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................2, 14, 15, 21

*Weiner v. Snapple Beverage Corp.*,
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).....................................................12

## STATUTES

New York General Business Law § 349(h).................................................................22

New York General Business Law § 350-e(3)............................................................22

**OTHER AUTHORITIES**

Daniel Fisher, *CFPB Estimates 1,200 More Class Actions A Year Under Anti-Arbitration Rule*, Forbes (Aug. 23, 2016), https://www.forbes.com/sites/danielfisher/2016/08/23/cfpb-estimates-1200-more-class-actions-a-year-under-anti-arbitration-rule ....................................................................................................22

# INTRODUCTION

To "prevent the needless erosion of the final judgment rule and the policy values it ensures," this Court has established a high bar for certification under Rule 23(f), which "will rarely be met." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd. (In re Sumitomo Copper Litig.)*, 262 F.3d 134, 140 (2d Cir. 2001). This is plainly not that rare case.

Plaintiffs sought certification of a vast class comprising every Peloton purchaser in New York State based on a tiny subset of advertisements describing Peloton's library of on-demand fitness classes as "growing" or "ever-growing." The District Court correctly denied certification for case-specific reasons concerning the quality of Plaintiffs' expert witnesses' reports—which were premised on manifestly inaccurate assumptions. That decision implicates no "legal question about which there is a compelling need for immediate resolution." *Id.* at 139. The District Court applied well-accepted standards for determining whether common issues predominate, and concluded that Plaintiffs had failed to propose a satisfactory methodology for proving common impact and damages under their own theory. Though Plaintiffs strive mightily to cast their objections in legal terms, their petition presents only a fact-bound dispute over the quality of the evidence.

First, contrary to Plaintiffs' protestations, the District Court did not require them to *prove* a price premium. Instead, the court simply applied the well-settled

principle that a putative class-action plaintiff must show that their claims are "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, that involved the modest requirement that Plaintiffs at least "offer evidence that the Challenged Statement" (i.e., the "growing" or "ever-growing" representation) "caused a price premium—*or … propose a methodology which could be used to demonstrate a price premium*." A46[1] (emphasis added). But Plaintiffs could not even meet that basic threshold. As the District Court explained, Plaintiffs' proposed model counterfactually assumed 100% exposure to the Challenged Statement and failed to isolate the impact of that statement from its surrounding language—making the model incapable of establishing causation and injury on a classwide basis. Remarkably, Plaintiffs do not offer *any* substantive response to the District Court's careful findings. Instead, they quote snippets of the District Court's opinion out of context in an effort to manufacture a legal error where none exists.

Second, the District Court correctly found Plaintiffs' model to be flawed under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)—another fact-bound issue that is ill-suited to Rule 23(f) review. The District Court concluded that Plaintiffs' model failed *Comcast* for two "independent" reasons: (1) that the model did not isolate the

---

[1] "A__" refers to the Appendix attached to Plaintiffs' Petition for Permission to Appeal. "R__" refers to the District Court's docket entries.

price impact from the Challenged Statement; and (2) that it did not account for supply-side factors. A66-67. Both those reasons warrant rejection of the damages model under settled law. And, in any event, Plaintiffs' petition only addresses the first reason. Thus, even if Plaintiffs' objections had any merit, they have not presented this Court with an issue that will affect the outcome of this case.

Third, Plaintiffs claim it was error for the District Court to "weigh[] the persuasiveness" of Plaintiffs' methodology for measuring a classwide price premium. Pet. 17. But, as this Court has repeatedly explained, it is not error for a district court to "weigh" conflicting testimony in assessing whether a Rule 23 requirement has been met, even if that assessment overlaps with the merits. *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)* ("*In re IPO Litig.*"), 471 F.3d 24, 42 (2d Cir. 2006), *decision clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007). And Plaintiffs' failure to offer any response to the District Court's considered criticisms only underscores that there was no abuse of discretion here.

Finally, the District Court's order will not "effectively terminate the litigation." *Sumitomo*, 262 F.3d at 139. Although Plaintiffs try to suggest that their claims are too modest to pursue individually, they offer no support for that assertion. If such a bare statement were alone enough to satisfy this Court's criteria for interlocutory review, virtually any denial of class certification would be immediately appealable. And Plaintiffs' claim is particularly dubious here because of the

availability of statutory damages much higher than the individual awards in a typical class action, and because Plaintiffs previously *did* bring their claims as individual arbitrations. Their newfound position that individual litigation is impracticable is simply not credible.

In short, Plaintiffs offer no reason to depart from the ordinary rule that litigants dissatisfied with a class certification decision must await final judgment. Nothing about this case stands out as the rare and extraordinary circumstance where interlocutory review is warranted. The petition should be denied.

## BACKGROUND

### A. Factual Background

Peloton is the world's largest interactive fitness platform, which sells stationary bicycles, treadmills, and monthly subscriptions to live and on-demand classes. A2. Plaintiffs' suit challenges Peloton's description of its on-demand library as "ever-growing" or "growing" (the "Challenged Statement"). *Id.* The Challenged Statement appeared in an extremely small subset of Peloton advertisements and did not appear in any television ads, Peloton's then-largest marketing channel. A3, A50. Indeed, only 4 of 269 webpages on Peloton's website contained the Challenged Statement. A50. And "even when the Challenged Statement appeared in [Peloton's] advertising or marketing materials, it did not appear alone or as the most prominent marketing message." *Id.* Instead, it appeared

in conjunction with numerous other selling points, including "unlimited access to the world's best instructors" and "15+ daily live classes." *Id.* Plaintiffs do not challenge any of these other representations.

Plaintiffs allege that the Challenged Statement was misleading due to a one-time change in Peloton's library. In April 2018, Peloton received a letter from the National Music Publishers' Association (NMPA), claiming that Peloton had used unlicensed music in its classes. A3; R246-8 ¶ 11 (Aronow Decl.). Because Peloton was already proactively negotiating licensing rights with NMPA, it did not remove any classes at that time. A3; R246-8 ¶¶ 10-11 (Aronow Decl.). However, after negotiations failed and NMPA filed suit in March 2019, Peloton removed the affected classes "out of an abundance of caution." R248-1 at 43:13-44:18 (Stanton Dep.); *see* A3. Although this change reduced the number of available on-demand classes by approximately 50%, subscribers were still left with approximately 7,000 classes to choose from. A3. And Peloton continued to add new material every day as live classes were recorded and archived, sometimes at a rate of over 100 classes per week. R243-10 at 169:15-22 (Dillon-Curran Dep.); R246-8 ¶ 8 (Aronow Decl.).

Only a single-digit number of subscribers cancelled their membership due to the removal of the classes. A73. And "[t]he price of each of the Peloton Membership, Peloton Bike, and the Peloton Tread remained constant both before, during, and for almost eighteen months after the Class Period." A54. Peloton also

continued to "add[] monthly subscribers to its Peloton Hardware products at approximately the same rate both before and after." *Id.*

## B. Procedural Background

Named Plaintiffs initially filed individual arbitrations pursuant to an arbitration clause in Peloton's Terms of Service. *See* R195 ¶¶50, 52 (Compl.). However, after Peloton declined to enforce that clause for this dispute, Plaintiffs brought this putative class action under New York General Business Law (NYGBL) Sections 349 and 350, which prohibit materially misleading advertisements. A2. Plaintiffs seeking relief under the NYGBL must show either (1) that they were exposed to and relied on the misleading statement; or (2) that the misrepresentation caused a price premium. A47. Because Plaintiffs concededly could not show universal exposure, they sought to proceed under a price-premium theory only.

This petition concerns Plaintiffs' second failed attempt at class certification. A3-6. The District Court denied Plaintiffs' first attempt, finding that the original named Plaintiffs either failed to state a claim or were inadequate to serve as class representatives. A4-5. Plaintiffs then filed a Third Amended Complaint naming Ishmael Alvarado and Eric Passman as representatives. R195. The District Court concluded that Alvarado was inadequate to serve as a representative due to "[h]is demonstrated lack of understanding of the case and of his role and responsibilities." A39. However, the court found Passman adequate and went on to assess

predominance.  The District Court concluded that materiality and falsity were capable of being established through common proof, but Plaintiffs had not shown that "causation, injury, and damages [were] common issues susceptible to common proof."  A46; *see* A45-74.

> 1. **The District Court held that Plaintiffs failed to propose a methodology that could show common causation and injury on a classwide basis.**

The District Court concluded that Plaintiffs had failed "to offer evidence that the Challenged Statement caused a price premium—or to propose a methodology which could be used to demonstrate a price premium."  A46.  Plaintiffs sought to demonstrate a price premium through a conjoint analysis.  A conjoint analysis consists of a survey designed to test consumer preferences by showing participants multiple, hypothetical product descriptions and prices and asking them to choose which products, if any, they would purchase.  A9 n.2.  Being able to show a price premium through this analysis was "critical to Named Plaintiffs' motion for class certification, as Named Plaintiffs acknowledge[d]," because if "there was no price premium or there [was] no way to show that there was a price premium, then individual questions would predominate."  A48.  In the absence of any price premium, Plaintiffs would have to show that each class member relied on the Challenged Statement.  Given that the statement appeared in an extremely small

subset of Peloton's advertising, individualized inquiries into reliance would dwarf any other common questions.

The court found Plaintiffs' proposed methodology deficient for two key reasons. *First*, the conjoint analysis performed by Plaintiffs' expert, J. Michael Dennis, assumed that 100% of purchasers had been exposed to the Challenged Statement. A56-57. But everyone, including Plaintiffs, agreed that was wrong. *See* A59-60 (describing Plaintiffs' evidence suggesting that, "at most, 10.99% of those who visited [Peloton's] website could have been exposed to the Challenged Statement").[2] Neither Dennis nor Plaintiffs' damages expert, Colin Weir, "provide[d] *any reliable methodology* to determine what portion, if any, of the putative class was exposed to and aware of the Challenged Statement, let alone demonstrate that a sufficient number of the putative class were exposed to and aware of the Challenged Statement such that there could be any measurable price premium." A57 (emphasis added) (citation omitted). In other words, Plaintiffs' experts assumed the issue Rule 23 is designed to test: whether enough people saw the Challenged Statement such that injury could be proven on a classwide basis,

---

[2] Plaintiffs submitted data that purported to show that from "July 2017 through June 2019, a period that does not correspond to the Class Period," "between approximately 5.5% and 10.99% of the individuals who visited [Peloton's] website … viewed the four webpages that contained the Challenged Statement." A58-59. The District Court identified numerous flaws with this data, including that it did not establish whether any of those individuals actually read the Challenged Statement, found it meaningful, or purchased a Peloton product. *Id.* at 59.

rather than through individual mini-trials over whether each class member actually relied on the Challenged Statement.

As against Plaintiffs' failure to provide any adequate model, the District Court noted that Peloton had offered "persuasive expert evidence" that very few individuals had actually seen or ascribed value to that statement. *See* A51-52 (discussing a survey finding that ~1% of individuals shown a webpage containing the Challenged Statement even noticed the statement). Moreover, Peloton had presented unrebutted evidence that the "price of each of the Peloton Membership, Peloton Bike, and the Peloton Tread remained constant both before, during, and for almost eighteen months after the Class Period," severely undercutting Plaintiffs' argument that the Challenged Statement caused a price premium. A54.

*Second*, the District Court concluded that "Dennis's conjoint analysis suffer[ed] from another fatal flaw." A57. "[E]ven assuming that the Challenged Statement was seen by all Peloton customers, Dennis's model d[id] not establish that the price premium he calculate[d] [was] attributable to the Challenged Statement." *Id.* Dennis's survey tested the statement: "Ever-Growing Library of Classes." *Id.* Dennis thus conflated the value consumers placed on two separate representations: (1) the existence of a library of on-demand classes, and (2) the fact that the library was ever-growing. Dennis did not separately assess the value consumers placed on a "library of classes," as compared to the fact that it was "ever-growing." A57-58

(quoting Dennis as stating "I'm not testing the specific phrase 'ever-growing.'" (citation omitted)). Therefore, Plaintiffs had proposed no model that was capable of calculating a price premium based on the Challenged Statement alone.

> **2.     The District Court held that Plaintiffs failed to propose a methodology that could calculate damages attributable to their theory of liability.**

The District Court further concluded that Plaintiffs had "not demonstrated that there exists a model capable of measuring the damages attributable to their theory of liability," as required by *Comcast*. A65. Because Dennis's conjoint analysis measured both the "value of the Challenged Statement and the fact that [Peloton] maintains a library of classes," it "d[id] not isolate the price premium resulting from the Challenged Statement" and thus could not calculate damages attributable solely to that statement. A66.

The District Court also rejected Plaintiffs' proposed methodology under *Comcast* for "a second, independent reason": Plaintiffs' failure to consider supply-side factors. A67. Plaintiffs' experts assumed a fixed supply, even as the price dropped. Dennis and Weir did not consider the obvious fact that Peloton "would have been willing to sell fewer Peloton products at decreased prices," which in turn would have affected the market price. A68. Accordingly, their model could not actually identify the market price in a but-for world where Peloton had not made the

Challenged Statement, and was thus incapable of "measur[ing] the degree to which [Plaintiffs] overpaid."  A71.

## ARGUMENT

## I.   THE DISTRICT COURT'S DENIAL OF CLASS CERTIFICATION IMPLICATES ONLY A FACT-BOUND DISPUTE OVER THE QUALITY OF PLAINTIFFS' EXPERT EVIDENCE.

Plaintiffs' petition presents no unresolved legal question.  Contrary to Plaintiffs' assertions, the District Court did not require conclusive proof of a price premium, did not err in finding Plaintiffs' methodology flawed under *Comcast*, and did not improperly weigh the parties' conflicting expert testimony.  Where, as here, the District Court "has applied the proper legal standards in deciding whether to certify a class, its decision may only be overturned if it constitutes an abuse of discretion."  *In re IPO Litig.*, 471 F.3d at 31.  Plaintiffs have not identified any such abuse, let alone one that demands this Court's immediate intervention.

### A.   The District Court did not require proof of a price premium.

Plaintiffs' central challenge to the District Court's decision rests on a demonstrably erroneous premise: that the court required them to *prove* the existence of a price premium.  The District Court did no such thing.  Instead, it merely held Plaintiffs to their burden to either "offer evidence that the Challenged Statement caused a price premium—*or* … propose a methodology which could be used to demonstrate a price premium."  A46 (emphasis added).

This is exactly the same standard other courts in this Circuit routinely apply. Indeed, the District Court's description of the standard is almost word-for-word identical to the one Plaintiffs quote from *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59 (S.D.N.Y. 2015). There, the district court denied class certification because "Plaintiff [had] offer[ed] no evidence that a price premium actually existed for cooking oils labeled 'All Natural,' nor ha[d] she proposed a reliable method for determining the existence or amount of any such price premium." *Id.* at 67; *see also Marotto v. Kellogg Co.*, 2020 WL 509035, at *3 (S.D.N.Y. Jan. 31, 2020) ("Plaintiff has provided no evidence that a price premium exists based on the alleged misrepresentations, and has not posited a methodology for determining the amount of a would-be premium."); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *8 n.16, *11 (S.D.N.Y. Aug. 5, 2010) ("[Defendant's] internal strategies alone do not prove that class members actually paid a premium," and "plaintiffs have not shown that they will be able to prove" a premium). Here, the District Court gave Plaintiffs the same two options: "offer evidence" of a price premium or "propose a methodology which could be used to demonstrate" one. A46. Plaintiffs did neither. *See* A55 (Dennis's conjoint analysis "is not sufficient to show that there was a price

premium and does not represent … a methodology by which a price premium could be demonstrated").[3]

Plaintiffs' true objection is thus not to the legal standard the District Court applied but rather to the court's rejection of Plaintiffs' woefully inadequate methodology. But such a factual dispute is not an appropriate issue for Rule 23(f)'s "rare[]" interlocutory review. *Sumitomo*, 262 F.3d at 140.

And strikingly, Plaintiffs offer no substantive response to the District Court's conclusions as to their model's flaws. As explained, the District Court rejected Plaintiffs' proposed methodology for two independent reasons. *First*, Plaintiffs' model counterfactually assumed 100% exposure. But even Plaintiffs concede that exposure was nowhere close to 100%. *See, e.g.*, A59 (urging 10.99% exposure at

---

[3]   Plaintiffs' purported conflict with *Allegra* is similarly manufactured. *See* Pet. 11 (citing *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 444 (E.D.N.Y. 2022)). The passage Plaintiffs excerpt from *Allegra* has nothing to do with whether a plaintiff must submit evidence capable of proving a price premium, but rather whether a defendant may conclusively *rebut* such evidence "by referring to real world market price data purportedly showing that there was no market price premium." *Allegra*, 341 F.R.D. at 444. Nothing in *Allegra* remotely suggests that a plaintiff may *establish* a price premium via a defective model that assumes 100% exposure to a challenged statement. To the contrary, the *Allegra* court spent over ten pages rigorously scrutinizing plaintiffs' evidence showing that virtually all consumers had, in fact, been exposed to the misleading statements in that case. *See id.* at 412-26 (explaining that LensCrafters had directed employees to give a scripted sales pitch containing the misrepresentations to all customers and that LensCrafters' homepage prominently featured the misrepresentations). By contrast, here, it is undisputed that very few customers even saw the Challenged Statement. *See* A59-60.

the very most). *Second*, "even assuming" 100% exposure, Plaintiffs' model "suffer[ed] from another fatal flaw": it failed to isolate the value of an "'ever-growing'" library from that of any "library." A57-58 (citation omitted).

Plaintiffs offer no response on either front, but instead argue that these were "contested issue[s]," Pet. 16, that the District Court should not have even evaluated. In other words, Plaintiffs seek a rule under which the mere fact that they produced a model, however flawed, would be enough to satisfy Rule 23(b)(3). But Plaintiffs cite no case, in any jurisdiction, adopting such a principle. That should come as no surprise, because Plaintiffs' proposed rule would run counter to decades of Supreme Court and Second Circuit precedent directing district courts "to take a '"close look"'" at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation omitted). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that Rule 23's requirements have been met. *Id.* at 350-51 (citation omitted). Rather than have courts conduct such a "rigorous analysis," Plaintiffs would have them "take the plaintiff's word" for it. *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 97 (2d Cir. 2018). But district courts "must do more than [that]." *Id.*

This "rigorous analysis" is essential because putative class-action plaintiffs can *always* present a model that produces common results by baking assumptions about commonality into the model. But the purpose of the Rule 23 inquiry is to determine whether such a model is actually capable of "generat[ing] common answers." *Wal-Mart*, 564 U.S. at 350 (emphasis and citation omitted). If the model's assumptions are not supported by the evidence, then Plaintiffs cannot prove their claims are capable of being resolved "in one stroke." *Id.* That is why the Supreme Court has repeatedly advised courts that Plaintiffs cannot "overcom[e] the absence of a common" link through "representative evidence" that assumes the very commonality in dispute. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016). Here, Plaintiffs proposed a model that *assumes* common exposure to the Challenged Statement and fails to independently evaluate the effect of that statement. That is not a model "capable" of generating a "'common answer[]'" for the class as a whole. *Wal-Mart*, 564 U.S. at 350 (citation omitted).

Ultimately, "the important point is that the requirements of Rule 23 must be met, not just supported by some evidence." *In re IPO Litig.*, 471 F.3d at 33. A mere proffer of a methodology is not enough. And, here, Plaintiffs make no argument as to why the District Court's careful evaluation of their model was an abuse of discretion. This Court should not fall for Plaintiffs' efforts to gin up a novel legal

question when their real problem is that their experts' analyses were grossly inadequate.

**B.    The District Court correctly applied *Comcast*.**

The District Court also correctly rejected Plaintiffs' expert analyses under *Comcast*, which held that "a model purporting to serve as evidence of damages in [a] class action must measure *only* those damages attributable to [Plaintiffs'] theory" of liability.  569 U.S. at 35 (emphasis added).

As this Court has explained, "while the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification, … it is nonetheless a factor that [a district court] must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues."  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  And where, as here, Plaintiffs have "relied upon" "a model for determining classwide damages" to establish predominance, that model "must actually measure damages that result from the class's asserted theory of injury."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015); *see id.* at 408 ("*Comcast* reiterated that

damages questions should be considered at the certification stage when weighing predominance issues.").[4]

Courts in New York and elsewhere "routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement." *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019); *see also* A66-67 (collecting cases). Indeed, several courts have rejected Plaintiffs' experts' analyses in other cases for precisely that reason. *See, e.g.*, *McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191, at *6-9 (S.D. Cal. Mar. 9, 2020); *Pardini v. Unilever United States, Inc.*, 2020 WL 6821071, at *4 n.2 (N.D. Cal. July 10, 2020). The District Court identified the same flaw in this case.

Plaintiffs have identified no meaningful division of authority on this issue. All of the decisions Plaintiffs cite agree that a price-premium model *must* isolate the effect of the challenged statement. *See* Pet. 16 (collecting cases). While Plaintiffs object that those cases "came to differing conclusions," that difference is explained, as Plaintiffs themselves seem to concede, by differences in the models used in those cases. *Id.* (describing all of the cases as conducting the same analysis of

---

[4] Plaintiffs' suggestion (at 12) that the District Court's decision conflicts with *Roach* is thus misplaced. The court cited and correctly applied *Roach*. A66.

"examin[ing] whether plaintiffs had isolated the representation at issue sufficiently").[5]

Nor does the District Court's analysis conflict with the Second Circuit's unpublished decision in *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57 (2d Cir. 2020). In that case, the district court found that plaintiff's model sufficiently isolated the single challenged representation: that defendants' wipes were "flushable." *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 333 (E.D.N.Y. 2019). On appeal, this Court held that this was not an "abuse [of] discretion." 818 F. App'x at 62. By contrast, here, the District Court reached a different conclusion based on a different model—which patently fails to separate out the single challenged adjective ("growing" or "ever-growing") from the existence of an on-demand library. A66-67. That likewise is not an abuse of discretion. And any difference between the two cases simply underscores that this is a fact-specific inquiry left to the sound

---

[5]    *Compare Price v. L'Oreal USA, Inc.*, 2021 WL 4459115, at *4-6 (S.D.N.Y. Sept. 29, 2021) (survey failed to isolate challenged statements "Keratindose" and "Pro-Keratin" from the term "+ Silk"), *McMorrow*, 2020 WL 1157191, at *6-9 (survey failed to isolate challenged statement "nutritious" from broader phrase "nutritious sustained energy" and "nutritious steady energy" (capitalization normalized)), and *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *21 (N.D.N.Y. Sept. 27, 2017) (analysis comparing price of Tito's vodka to Smirnoff's and Skyy's did not isolate premium associated with Tito's "handmade" representation), *with Allegra*, 341 F.R.D. at 458 n.64 (E.D.N.Y. 2022) ("Plaintiffs have sufficiently demonstrated that [their] [m]odel isolates the price premium due to the alleged misrepresentations about AccuFit").

discretion of the district court. Nothing in *Kurtz* remotely suggests that merely proffering *some* model suffices to meet Plaintiffs' Rule 23 burden.

In any event, Plaintiffs completely ignore the "second, independent reason" the District Court found their model inadequate under *Comcast*—namely, that Plaintiffs failed to consider supply-side factors. A67. Plaintiffs do not deny that their model fails to account for such factors or that other courts have rejected their experts' analyses based on that flaw. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020), *aff'd sub nom. Schell v. Volkswagen AG*, 2022 WL 187841 (9th Cir. Jan. 20, 2022); *Schechner v. Whirlpool Corp.*, 2019 WL 4891192, at *7-8 (E.D. Mich. Aug. 13, 2019); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 235 (S.D.N.Y. 2019) (rejecting another expert's model for the same reason). Since Plaintiffs have not even challenged the District Court's "second, independent reason" for finding their model flawed, any resolution of their objections to the District Court's first reason would not alter the result.[6]

---

[6] In the District Court, Plaintiffs argued that their model considered "supply-side factors" because it incorporated historical pricing data. A69. But as the District Court explained, historical prices do not "account for changes in supply" in the but-for world where Peloton had not made the Challenged Statement. *Id.*; *see also Schechner*, 2019 WL 4891192, at *7; *In re Volkswagen*, 500 F. Supp. 3d at 949.

## C. The District Court correctly considered Peloton's expert reports rebutting Plaintiffs' price-premium analysis.

Finally, Plaintiffs contend that the District Court improperly "delved into the merits" by weighing the persuasiveness of their experts' methodology. Pet. 17. But this Court has expressly *rejected* the proposition that "a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement just because that requirement is identical to an issue on the merits." *In re IPO Litig.*, 471 F.3d at 42. The fact that there exists "some or even full overlap" between a Rule 23 requirement and a merits issue "is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met." *Id.* at 41. To determine whether common issues predominate, district courts must assess plaintiffs' proffered model and "resolve[] factual disputes relevant to [that] Rule 23 requirement." *Id.* Here, the District Court appropriately and carefully studied Plaintiffs' model to ensure it was capable of demonstrating a price premium because, in the absence of any such premium, causation and injury could not be determined by common evidence.

Plaintiffs similarly suggest that because the District Court denied Peloton's *Daubert* motion, the court could not have found their methodology inadequate for Rule 23(b)(3) purposes. Pet. 18. But, again, this Court has explicitly "disavow[ed]" any suggestion that "an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed." *In re IPO Litig.*, 471 F.3d at 42.

Once a district court has determined that the testimony is admissible, it still must go on to "assess all of the relevant evidence admitted" and "determine whether each Rule 23 requirement has been met." *Id.*; *see Wal-Mart*, 564 U.S. at 354 (even if plaintiffs' expert testimony were admissible under *Daubert*, it "does nothing to advance [their] case"). The District Court thus appropriately and correctly dispensed its obligation to ensure that every Rule 23 requirement, including predominance, was met.

## II. THERE IS NO COMPELLING NEED FOR IMMEDIATE RESOLUTION OF THESE ISSUES, NOR DOES THE ORDER EFFECTIVELY TERMINATE THE LITIGATION.

Even where—unlike here—a plaintiff identifies an important and unsettled legal question, this Court does not grant interlocutory review unless there is also a "compelling need for [its] *immediate* resolution." *Sumitomo*, 262 F.3d at 139 (emphasis added). Plaintiffs offer no reason why their claimed errors cannot be appropriately reviewed after final judgment. That alone means the petition should be denied.

Plaintiffs likewise cannot show that the District Court's order is "questionable" and "will effectively terminate the litigation." *Id.* Plaintiffs contend that the District Court's order will terminate the litigation because their "individual claims are too modest to be litigated independently." Pet. 20. But Plaintiffs offer nothing to substantiate that bare assertion—and it is fundamentally inconsistent with

their actual conduct. Plaintiffs originally filed their claims as *individual* arbitrations. *See* R195 ¶ 52 (Compl.). Plaintiffs thus clearly considered their individual claims to be of sufficient value to merit individual pursuit. Their unexplained about-face should not be credited.

Moreover, this is hardly a case where recovery is trivial. Under the NYGBL, Plaintiffs are entitled to a minimum of $550 if they prevail, in addition to potential treble damages and attorney's fees. *See* N.Y. Gen. Bus. Law § 349(h) ("actual damages or fifty dollars, whichever is greater"); *id.* § 350-e(3) ("actual damages or five hundred dollars, whichever is greater"). That amount significantly exceeds the average payout associated with consumer class actions. *See, e.g.*, Daniel Fisher, *CFPB Estimates 1,200 More Class Actions A Year Under Anti-Arbitration Rule*, Forbes (Aug. 23, 2016) ("average payout of $32" in study of 251 class actions).[7] Thus, if this Court finds that the denial of class certification "effectively terminate[s]" this litigation, then that factor would be satisfied in nearly every case and would impose no meaningful barrier to Rule 23(f) review, which is meant to be "rare[]." *Sumitomo*, 262 F.3d at 140.

Ultimately, Plaintiffs have identified no legal question warranting this Court's extraordinary review, and have not even tried to meaningfully dispute the District

---

[7] Available at https://www.forbes.com/sites/danielfisher/2016/08/23/cfpb-estimates-1200-more-class-actions-a-year-under-anti-arbitration-rule.

Court's careful and well-reasoned explanation for why their proposed methodology is incapable of demonstrating a classwide impact. Because Plaintiffs come nowhere close to meeting Rule 23(f)'s high bar, this Court should deny their petition.

## CONCLUSION

The petition should be denied.

Dated: May 26, 2023

Respectfully submitted,

/s/ Samir Deger-Sen

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Christine C. Smith
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Steven N. Feldman
William O. Reckler
Samir Deger-Sen
Lilia B. Vazova
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Respondent Peloton Interactive, Inc.*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

I hereby certify that this opposition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c) because it contains 5,167 words. The opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this opposition has been prepared in a proportionally spaced typeface using Microsoft Word 365 with 14-point Times New Roman font.

Dated: May 26, 2023                          */s/ Samir Deger-Sen*
                                              Samir Deger-Sen